IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

EUGENIA DIANA THOMAS,

     **Plaintiff,**

v.                                      **Civil Action No. 3:09-00586**

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

     **Defendant.**

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security (hereinafter "Commissioner") denying Claimant's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (Docket No. 1). Both parties have consented in writing to a decision by the United States Magistrate Judge. (Docket Nos. 4 and 5). The case is presently pending before the Court on the parties' cross-motions for judgment on the pleadings (Docket Nos. 8 and 9).

I.   **Procedural History**

Plaintiff, Eugenia Diana Thomas (hereinafter "Claimant"), filed an application for DIB on May 1, 2006, alleging disability beginning April 23, 2004 due to the following conditions: osteoarthritis, degenerative disc disease, scoliosis, high cholesterol, high blood pressure, diabetes, and depression. (Tr. at 119 and 131). The

1

claims were denied initially on June 13, 2006 (Tr. at 65-69) and upon reconsideration on December 8, 2006 (Tr. at 75-77).

Thereafter, Claimant requested an administrative hearing. (Tr. at 78). The hearing was held on February 5, 2008 before an Administrative Law Judge, the Honorable Andrew Chwalibog (hereinafter the "ALJ"). (Tr. at 28-57). By decision dated April 1, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-27).

Under 42 U.S.C. § 423(d) (5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. § *Id*. 416.920(a).

The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id*. § 416.920(b). If the claimant is not engaged in substantial gainful employment, the second inquiry is whether claimant suffers from a severe impairment. *Id*. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is

whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(e).

By satisfying inquiry four, the claimant establishes a prima facie case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant met the insured status requirements of the Social Security Act through December 31, 2010. (Tr. at 15, Finding No. 1). He further found that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since April 23, 2004, the alleged onset date. (*Id.* at Finding No. 2). Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of degenerative disc disease and chronic pain of the spine, Type II diabetes mellitus, and obesity. (*Id.* at Finding No. 3).

At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18, Finding No. 4). The ALJ then found that Claimant had the residual functional capacity (hereinafter

3

"RFC") to perform a range of light level work activities as defined in 20 C.F.R. 404.1567(b), limited by the following:

> The claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six out of eight hours, and sit for six out of eight hours. Nonextertionally, the claimant can only occasionally climb, balance, stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to extreme cold temperatures and vibrations.

(citations omitted) (Tr. at 19, Finding No. 5).

As a result, Claimant could not return to her past relevant employment as a factory worker and hand packager, which was classified by the vocational expert at the administrative hearing as requiring medium to very heavy exertional activities of an unskilled and semiskilled nature. (Tr. at 25, Finding No. 6). Nevertheless, the ALJ considered Claimant's age of 49 years old at the time of the decision, which is defined as a younger individual aged 19-49, and the fact that she completed high school and could communicate in English in finding that transferability of job skills was not material to the disability determination.[1] (Tr. at 25, Finding Nos. 7-9). The ALJ concluded that Claimant could perform jobs such as machine tender, production inspector, surveillance system monitor, and information clerk. (Tr. at 25-26, Finding No. 10). On this basis, the ALJ denied benefits. (Tr. at 27). The ALJ's decision became the final decision of the Commissioner on March 27, 2009 when the Appeals Council denied Claimant's request or review. (Tr. at 1-4).

On May 27, 2009, Claimant brought the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Docket No. 1).

---

[1] The Medical-Vocational Rules supported a finding that she was not disabled regardless of whether she had transferable job skills.

The Commissioner filed an Answer on July 22, 2009. (Docket No. 6). The parties filed their briefs in support of judgment on the pleadings on August 21, 2009 and September 22, 2009. (Docket Nos. 8 and 9). The matter is, therefore, ripe for resolution.

## II.   <u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying Claimant's applications for benefits is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as the following: Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence." *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972), quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).   Consequently, the decision for the Court to make is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart,* 434 F. 3d 650,653 (4th Cir. 2005), citing *Craig v. Chater,* 76 F.3d585, 589 (4th Cir. 2001).

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court will not re-weigh conflicting evidence or substitute its judgment for that of the Commissioner. *Id.* However, the Court must not "escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The ultimate question for the Court is whether the decision of the Commissioner is well-grounded, bearing in mind that "[w]here conflicting evidence allows reasonable minds to differ as to whether a

5

claimant is disabled, the responsibility for that decision falls on the [Commissioner]."
*Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

## III.   <u>Claimant's Background</u>

Claimant was 49 years old at the time of the administrative hearing. (Tr. at 49). She completed high school. *Id.* Her past work experience included over sixteen years of employment as a chemical operator at a plastic chemical plant and a period of self-employment lasting one year or less at a flea market. (Tr. at 147). [2]

## III.   <u>The Medical Record</u>

The medical evidence reflects that between April 13, 2004 and June 22, 2004, Claimant was evaluated and treated weekly at Gallipolis Chiropractic Clinic for neck and back pain. (Tr. at 199-200). On the date of her final visit, Dr. Joey Wilcoxon, the responsible chiropractor, completed a Physician's Report for Claimant's employer, M & G Polymers, listing the following diagnoses: "847.0 Cervical" and "846.0 Lumbosacral." (Tr. at 199). Dr. Wilcoxon noted that Claimant was "unable to work at this time," but was "showing improvement;" that her total disability began on April 23, 2004 and that her "spine [was] in a weakened state and [would] require ongoing care on a reduced frequency" basis for the "next 12 months."  Dr. Wilcoxon could not determine if Claimant would require treatment after that period. *Id.*

---

[2] The ALJ found that Claimant's work at the flea market did not constitute substantial gainful employment.  (Tr. at 15).

On August 4, 2004, James P. Wagner, D.O., Claimant's primary care physician at the time, referred Claimant to Ralph W. Webb, M.D., a rheumatologist at University Physicians, who documented that Claimant had a past medical history of hypertension, hyperlipidemia, insomnia, anxiety disorder, and impaired glucose tolerance. (Tr. at 203). His impression was the following:

1. Vague history of possible rheumatoid arthritis. I do not see any clinical signs to strongly suspect rheumatoid arthritis at this time. While it is true that sometimes patients will develop peripheral nodules before having discrete arthritis, the patient's tissue enlargement in the ankle area really looks like adipose tissue to me rather than rheumatoid nodules. The patient's various low liter antibody values are not necessarily of any clinical significance in this setting.

2. Degenerative joint disease.

3. Multiple medical problems as listed above.

(Tr. at 204).

On March 1, 2005, Richard Del Checcolo, M.D., examined Claimant at the request of M & G Polymers.  Dr. Del Checcolo assessed Claimant's medical conditions to include the following:

1. Chronic spine and joint pain for two years plus. I believe she has mainly DJD with chronic pain and swelling which limits her ability to perform physical labor.

2. Chronic anxiety and depression well controlled with Lexapro.

3. Hypertension.

4. Status post hysterectomy, appendectomy, and [transient ischemic attack]

5. Mild diabetes [with blood sugar] 130

(Tr. at 213-216).

On June 12, 2006, G. David Allen, Ph.D., completed a Psychiatric Review Technique at the request of the Social Security Administration ("SSA"), evaluating Claimant's mental faculties since April 23, 2004.  (Tr. at 254-267). He found that she had non-severe depression and anxiety, "per [her] treating source." (Tr. at 254, 257 and 259). On a scale of "none," "mild," "moderate," "marked," "extreme," and "insufficient evidence," he found that Claimant had no limitation in "activities of daily living" and no "episodes of decompensation" and a "mild" limitation in "difficulties in maintaining social functioning" and "difficulties in maintaining concentration, persistence or pace." (Tr. at 264). Dr. Allen noted that Claimant's husband denied her assertions that she needed to be reminded "to go places" and that "she gets grouchy easily," but that overall, her statements appeared credible. (Tr. at 266). He also stated that her treating source indicated that her mental conditions were well controlled by the medication Lexapro. *Id.*

On June 13, 2006, Dr. Gregory Langford completed a physical RFC assessment at the request of the SSA. (Tr. at 268-275). He found the following:

- Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit with normal breaks for about 6 hours in an 8-hour workday; and push and/or pull an unlimited amount, other than as shown for lift and/or carry.

- Claimant could occasionally climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl.

- Claimant had no manipulative, visual, communicative, or environmental limitations.

(Tr. at 269-272).

Dr. Langford noted that regarding activities of daily living, Claimant complained of "restless sleep," but that there were "no self-care deficits" as she was able to prepare

8

full meals, clean her house, do laundry, "mow her grass sometimes," drive, shop and go to yard sales, and lift approximately twenty pounds, although she claimed that she could not stand because her "legs swell" and her "back hurts." (Tr. at 273). He stated that the pain she complained of was not credible, as she was "on no pain" medication, had no end-organ damage from hypertension, no coronary artery disease from high cholesterol, no end-organ damage or diabetic ketoacidosis episodes from diabetes mellitus, and that her RFC was reduced to light work based on physical findings. *Id.* Dr. Langford noted that Dr. Checcolo's March 1, 2005 statement that he believed that Claimant had mainly degenerative joint disease with chronic pain and swelling, which limited her ability to perform physical labor was not supported by the evidence in the file. (Tr. at 274). Dr. Langford stated that Dr. Checcolo's statement was not supported by the record because although Claimant complained of physical limitations, she was not precluded from performing light work with the restrictions and limitations noted by Mr. Langford. *Id.*

On October 27, 2006, Jeff Harlow, Ph.D., completed a Psychiatric Review Technique. (Tr. at 290-303). He found that Claimant suffered from non-severe depression and anxiety. (Tr. at 290, 293 and 295). She was mildly limited in each of the listed categories, but there were no episodes of decompensation. (Tr. at 300). Dr. Harlow noted that Claimant's "statements about functional capacities on the [activities of daily living] form [were] partially credible because they [were] externally inconsistent with clinical findings of the treating sources." (Tr. at 302). He further stated that since "all key functional capacities are indicated to be within normal limits or mildly deficient and treatment indicates adequate mental functioning, it is concluded that mental impairments are not severe." *Id.*

9

On November 21, 2006, Kip Beard, M.D., completed a consultative examination report. (Tr. at 304-311). Dr. Beard's summarized his conclusions as the following:

> The claimant is a 48-year-old female with a history of type 2 diabetes. Examination today reveals no appreciable end-organ damage related to diabetes.
>
> There is also a history of hypertension without appreciable end-organ damage associated with hypertension. There is also history of chronic neck and back pain following injury. Examination today revealed some mild range of motion loss of the neck and back with some mild pain and muscular tenderness. There was no focal weakness, atrophy, or sensory loss. Reflexes did seem increased. There was bilateral Hoffman sign and four to five beats of clonus in the lower extremities. These findings could perhaps represent some early myelopathy, but the claimant's gait was not spastic, and manipulation was well preserved.
>
> Regarding the joint pain, examination today reveals some slight motion loss at the knees, but otherwise preserved range of motion. There was no evidence of inflammatory arthritis. The claimant's gait appeared normal. She did not present with or require ambulatory aids.

(Tr. at 310).

On December 2, 2006, Marcel Lambrechts, M.D., completed a physical RFC assessment. (Tr. at 313-320). Dr. Lambrechts reiterated Mr. Langford's June 12, 2006 findings, except that he added that Claimant should avoid concentrated exposure to extreme cold or vibration. (Tr. at 317). Dr. Lambrechts stated:

> This claimant's symptoms seem consi[s]tent with the findings. She is diabetic, moderately obese with mild hypertension and has evidence of arthritis already. She [has] neck low back pain and her LSS XR shows facet degeneration at L5-S1. It seems that she can still work and her RFC is reduced as noted.

(Tr. at 318).

On January 7, 2008, Stephan J. Serfontein, M.D., evaluated Claimant. (Tr. at 336-337). Dr. Serfontein began treating Claimant on July 6, 2006, replacing Dr. Wagner as Claimant's primary care physician. (Tr. at 168; Def. Br. at 7). Regarding

10

depression, Dr. Serfontein noted that Claimant was doing very well with no depressive symptoms on screening, that she experienced no side-effects from her medication, and that she had no suicidal ideation and was able to handle everyday situations well. (Tr. at 337). He also stated that Claimant diabetes was controlled and that she had no side effects from her medication. *Id.* Regarding hyperlipidemia, Claimant was "doing well" and her lipids were within acceptable limits. *Id.* Lastly, Dr. Serfontein reviewed Claimant's blood pressure medication with her and instructed her to follow a low-salt diet, exercise regularly, and limit her caloric intake. *Id.*

On January 29, 2008, Dr. Serfontein responded to a list of questions prepared by Claimant's attorney:

> Q   Do you feel that [Claimant's] subjective complaints of pain and fatigue are consistent with your objective findings? If so, on what do you base this opinion?
>
> A   Yes, has fibromyalgia.
>
> Q   Do you think that [Claimant] could engage in employment (8 hours a day, 5 days a week) on a consistent basis? If not, why?
>
> A   No; severe pain + discomfort.
>
> Q   Does [Claimant] have other impairments which limit her ability to work? If so, what?
>
> A   Severe asthma
>     Depression

(Tr. at 375-376).

On January 30, 2008, Dr. Wilcoxon completed an assessment of Claimant's physical ability to do work-related activities at the request of Claimant's attorney. (Tr. at 330-334). He noted that she could lift 15 pounds and carry 8 pounds and that she could lift/carry a maximum of 6-8 pounds occasionally and 0-6 pounds frequently,

based on her "degenerative disc disease of the lumbar, thoracic, and cervical spine." (Tr. at 332). She could stand and/or walk a total of 4 hours in a workday with breaks every 10 minutes. (Tr. at 333). She could sit for 6-7 hours in a workday with breaks every 20 minutes. *Id.* She could occasionally balance, stoop, crouch, kneel, and crawl, but never climb. *Id.* Physical functions of "handling and pushing/pulling would cause acute exacerbations if pressed beyond her limits," but she was not limited in reaching, feeling, seeing, hearing, or speaking. (Tr. at 334). She should avoid heights and machinery because she could not "balance or move fast enough to get out of the way" and temperature extremes because they "affect her arthritis adversely." *Id.*

Dr. Wilcoxon also responded to the list of questions prepared by Claimant's attorney:

> Q  Do you feel that [Claimant's] subjective complaints of pain and fatigue are consistent with your objective findings? If so, on what do you base this opinion?
>
> A  Yes. I base this opinion on the fact that [Claimant] lives with chronic degenerative disc disease and osteoarthritis on a daily basis. These conditions are permanent and will further degenerate as she ages.
>
> Q  Do you think that [Claimant] could engage in employment (8 hours a day, 5 days a week) on a consistent basis? If not, why?
>
> A  No, her spine has too much degenerative disease present even for her to have a sedentary job 8 hrs/day 5 days/week. She would not hold up under that kind of postural stress and pressure.
>
> Q  Does [Claimant] have other impairments which limit her ability to work? If so, what?
>
> A  I believe she is also suffering from fibromyalgia that affects the muscles of her arms, trunk and legs as well.

(Tr. at 330-331).

12

On February 21, 2008, Dr. Wilcoxon stated the following in a letter to Claimant's attorney:

> I have treated your client/my patient [Claimant] since 11/02/2001 and this letter is written to clarify her condition and the treatment that has been rendered. [Claimant] first entered this office in November of 2001 for examination and possible treatment of pain in the lumbar spine, right hip, legs, ankles, and cervical spine.Chiropractic/orthopedic/neurological testing coupled with X-rays and MRI studies have led to the diagnosis of cervical disc bulging at C5, C6 and C6-C7. Degenerative disc disease is present at those levels as well as the bottom three lumbar levels. In addition, she suffers from fibromyalgia involving the cervical, thoracic, and lumbar regions. Her condition became so severe that she had to leave work in April of 2004. She treats for these conditions once per week and has done so since her beginning date with very few exceptions. Her prognosis is fair with continuing treatment. Her conditions are permanent and will most likely become more severe as she ages. The degenerative process is advanced as compared to her age and [in] my professional opinion she is totally disabled and will not be able to return to, not only her job, but any job that is full time.

(Tr. at 335).

On February 25, 2008, Dr. Serfontein completed a medical assessment of Claimant's physical ability to do work-related activities at the request of Claimant's attorney. (Tr. at 372-376). In his opinion, Claimant was limited to lifting/carrying 12-15 pounds occasionally and 15 pounds frequently due to "chronic, persistent muscle pain where having pains." (Tr. at 372). Also, Claimant could stand/walk for a total of 1 hour in a workday, sit for 30 minutes without interruption, occasionally balance and stoop, but never climb, crouch, kneel, or crawl. (Tr. at 373). She was limited in pushing/pulling, but not in reaching, handling, feeling, seeing, hearing, or speaking. (Tr. at 374). She should avoid heights, moving machinery, temperature extreme, chemicals, dust, fumes, and humidity. *Id.*

The same day, Dr. Serfontein assessed Claimant's mental ability to do work-related activities. (Tr. at 377-379). On a scale of "unlimited," "good," "fair," "poor," and

13

"none," Claimant was "unlimited" in following work rules and relating to co-workers; "good" in using judgment, interacting with supervisor(s), functioning independently, and maintaining attention/concentration; "fair" in dealing with the public; and "poor" in dealing with work stresses. (Tr. at 377). On the same scale, Claimant was "good" in understanding, remembering, and carrying out simple to complex job instructions; "unlimited" in maintaining personal appearance; "good" in relating predictably in social situations and demonstrating reliability; and "fair" in behaving in an emotionally stable manner. (Tr. at 378).

### IV.    Claimant's Challenges to the Commissioner's Decision

Claimant asserts that (1) the ALJ's decision is not supported by substantial evidence because "the weight of the medical evidence is sufficient to prove that [Claimant] is disabled" or in the alternative, "that her impairments prevent her from engaging in substantial gainful activity;" (2) that the ALJ failed to properly consider the opinions of Claimant's treating sources; and (3) that relevant and material evidence is missing from the transcript of record. (Pl.'s Br. at 4-11).

The Commissioner, on the other the hand, argues that the ALJ complied with the regulations in evaluating the medical source opinions and Claimant's subjective complaints and that the electronic transcript is complete.  (Def.'s Br. at 11-20).

### V.    Discussion

#### a.  Claimant's Impairments in Combination

Claimant's initial allegation of error has two alternate prongs. First, Claimant contends that the sheer number of her medical conditions, standing alone, is proof of disability. She argues that her multitude of problems, when considered in combination,

must equal or meet a Listed Impairment. (Pl.'s Br. at 5). Claimant offers no insight, however, into what Listed Impartment is met by her combination of conditions.

"The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity," *see* 20 C.F.R. § 404.1525(a) (2008), regardless of age, education or work experience, *see Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *See Id.* at 531.

In *Spaulding v. Astrue*, 2010 WL 3731859 (S.D.W.Va. 2010), the claimant made the same argument that her impairments "[o]bviously" equaled a listed impairment and prevented her from working. *Spaulding*, 2010 WL 3731859 at *16. The Court held that her argument was without merit, stating that "[u]nder the regulations, it is Claimant's burden to prove that her condition equals the criteria of one of the listed impairments, yet Claimant does not even attempt to specify which listing she believes her conditions meet." *Id.*

Here, the ALJ specified why Claimant's severe impairments did not meet a Listing. (Tr. at 18-19). He then stated the following:

> The undersigned has also considered the claimant's impairments in combination to see if they equal in severity any of the listings under Appendix 1 but finds that the evidence establishes that the claimant is able to perform a wide range of activity, which is not consistent with presumptive disability (Exhibit 16F).[3] Therefore, her impairments, singly

---

[3] "Exhibit 16F" is a Physical RFC Assessment completed by Dr. Lambrechts dated December 2, 2006. (Tr. at 313-320).

> and in combination, do not equal in severity any listed impairment. Thus, a determination of whether she retains the [RFC] to perform the requirements of her past relevant work or can adjust to other work is required.

(Tr. at 19). Substantial evidence supports the ALJ's determination that Claimant's combination of impairments does not equal in severity any of the impairments listed, and Claimant does not offer any precise argument to contradict this finding. Therefore, the Court rejects Claimant's contention that her physical and mental impairments in combination equal a Listed Impairment.

Second, Claimant argues in the alternative that "in the event the [Claimant's] impairments in combination do not equal a Listed Impairment, then it is [her] position that her impairments prevent her from engaging in substantial gainful activity." (Tr. at 5-6). In support of this argument, Claimant (1) points to the testimony of the vocational expert who stated that Claimant was incapable of substantial gainful activity if afforded full faith and credibility, (2) argues that the ALJ erred in finding that her testimony was not entirely credible and that her credibility was only "fair," and (3) alleges that the ALJ improperly substituted his personal opinion for that of Dr. Serfontein and Dr. Wilcoxon and did not provide any meaningful discussion as to why he disregarded their medical opinions. (Pl.'s Br. at 6-8).

As Claimant states, the ALJ's "credibility determination is all the more important in this case because the Vocational Expert testified that [Claimant was] unable to perform substantial gainful activity if her testimony is found to be fully credible." However, contrary to Claimant's assertions, the ALJ appropriately assessed Claimant's credibility in accordance with 20 C.F.R. § 404.1529.

16

Because the ALJ determined that Claimant had medically determinable impairments that could cause her pain or symptoms, he evaluated the intensity, persistence, and limiting effects of Claimant's symptoms to determine the extent to which they limited her ability to do basic work activities. (Tr. at 19); *see* 20 C.F.R. § 404.1529. For this purpose, whenever statements about the intensity, persistence, and limiting effects of pain and other symptoms were not substantiated by objective medical evidence, the ALJ made a credibility determination based on a consideration of the entire case record. *Id.* The ALJ thoroughly considered and discussed  Claimant's daily activities; the location, duration, frequency, and intensity of Claimant's pain and other symptoms; precipitating and aggravating factors; Claimant's medication and side effects; and treatment other than medication. (Tr. at 20-21).

Upon considering all of the evidence, the ALJ concluded that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were "only fair." (Tr. at  21). The ALJ thoroughly articulated the basis for his credibility finding, explaining in detail how specific pieces of medical and testimonial evidence did not reconcile with Claimant's statements regarding her pain and symptoms. (Tr. at  21-23). Therefore, his credibility determination fully comported with 20 C.F.R. § 404.1529, and Claimant's argument that the ALJ erred in finding that Claimant's statements were not entirely credible is without merit.

Claimant's contention that the ALJ improperly substituted his personal opinion for that of Dr. Serfontein and Dr. Wilcoxon and did not provide any meaningful discussion as to why he disregarded their medical opinions is similarly unfounded. Claimant argues that the ALJ exceeded the boundaries of his expertise in finding that that Claimant did not suffer from fibromyalgia despite the fact that Dr. Serfontein and

17

Dr. Wilcoxon stated that she had the condition. (Pl.'s Br. at 7-8). Claimant specifically cites portions of letters written to Claimant's attorney by Dr. Serfontein and Dr. Wilcoxon (Pl.'s Br. at 8). [4]

At the second step of the five-step sequential evaluation process, an ALJ must determine whether the claimant has medically determinable impairments or a combination of impairments that are "severe." 20 C.F.R. 404.1520(c). At this step, the ALJ considered Claimant's alleged fibromyalgia, stating:

> In February 2007 shortly after the death of her mother, although there was no indication of any sensory deficits, upon the claimant's subjective complaints of increased depression, neuropathic type pain of the extremities, and multi-joint pain with clinical signs of trigger point tenderness, Dr. Serfontein rendered additional assessments of fibromyalgia and neuropathy (Exhibit 26F). However, follow up visits in May and September 2007, show both greatly improved with medication (Lyrica, a nerve pain reliever, Darvocet, a pain reliever, and Lexapro, [an] anti-anxiety/anti-depressant medication. (Id.). Moreover, there is no indication of further complaints to this degree and there is nothing in the medical evidence to suggest that diagnostic workup has been ordered. (Id.). In fact, other than this one occasion of positive trigger point tenderness, there is no indication that multiple trigger points have been demonstrated upon repeated examination (Exhibits 10F and 26F). Similarly, while reports of Dr. Wilcoxon dated January and February 2008 indicate that *he believes* the claimant is also suffering from fibromyalgia involving the shoulders, cervical spine, and lumbar regions, as is the case with Dr. Serfontein's treatment notes, there are only vague descriptions of muscular tenderness without specific signs to support such a diagnosis (Exhibits 24F and 25F). Absent more, the undersigned does not find that the medical evidence establishes a definitive medically determinable impairment of either neuropathy or fibromyalgia.

(Tr. at 17).

---

[4] Dr. Wilcoxon's letter is Exhibit 25F, which Claimant states is missing from the transcript of record. However, a review of the electronically filed transcript reflects the presence of this document.  (*See* Tr. at 335).

A review of the medical record, specifically focusing on the treatment notes and letters from Dr. Serfontein and Dr. Wilcoxon (Tr. at 336-371, 276-287, 329-334, and 335), reveals that the ALJ's rationale and finding regarding Claimant's alleged fibromyalgia is supported by substantial evidence. In response to the question by Claimant's attorney, "Do you feel that [Claimant's] subjective complaints of pain and fatigue are consistent with your objective findings? If so, on what do you based this opinion," Dr. Serfontein stated, "Yes, has fibromyalgia." (Tr. at 375). Dr. Wilcoxon stated in January 2008, "I believe she is also suffering from fibromyalgia" and in February 2008 that Claimant "suffers from fibromyalgia." (Tr. at 335). However, these statements rest entirely on Claimant's subjective complaints rather than objective medical evidence.

As discussed, the ALJ concluded that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were "only fair." (Tr. at 21). The Court found that the credibility determination was supported by substantial evidence. This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1983). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.,* quoting *N.L.R.B. v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 14 (4th Cir. 1983). Exceptional circumstances include cases where "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Id.*, quoting *NLRB v. McCullough Environmental Services, Inc.,* 5 F.3d 923, 928 (5th Cir. 1993).

There are no such "exceptional circumstances" present here. The credibility determination is reasonable, does not contradict other findings of fact, and is based on adequate reasoning. Therefore, the ALJ's finding of fact that Claimant does not suffer from fibromyalgia, as it is based on his proper assessment of Claimant's credibility as "only fair," is supported by substantial evidence.

Finally, Claimant argues that the ALJ "failed to articulate in any meaningful manner why he disregarded the medical opinion of Dr. Wilcoxon" and "Dr. Serfontein" and that he failed to appreciate the impact that "medium to very heavy in exertion" employment history had on a woman "5'6"in height and weighing 205-237 pounds." (Pl.'s Br. at 8 and 9). These arguments ignore the written decision of the ALJ. The ALJ explained at length his reasoning for the weight he afforded to the opinions of both doctors. (Tr. at 24-25). Further, the ALJ considered the effect of Claimant's work history by questioning her about her past employment during the administrative hearing, by inquiring what prevented her from working, by considering her subjective complaints in making a credibility determination, and in considering the medical evidence of record. (Tr. at 31-53 and 20-25).

### b. __Consideration of Treating Source Opinions__

Claimant next alleges that the ALJ failed to follow the Social Security Regulations and case law in his treatment of Claimant's treating doctors' opinions. (Pl.'s Br. at 9).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.

*See* 20 C.F.R. § 404.1527(d) (2) (2008).  Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater,* 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (2008).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2) (2000).  Ultimately, it is the responsibility of the Commissioner, not the Court, to review the case, make findings of fact, and resolve conflicts of evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Court's obligation is to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational.  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994).

Section 20 C.F.R. § 404.1527 addresses how the SSA considers medical opinions in deciding whether a claimant is disabled.  According to 20 C.F.R. § 404.1527(d), "[r]egardless of its source, we [the SSA] will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2), we consider all of the following factors in deciding the weight we give to any medical opinion." Consequently, if the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(d) in weighing all of the medical opinions, including those of the treating physician.  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good

reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, by extension, than to non-examining sources). Section 404.1527(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

In his decision, the ALJ discussed the medical evidence received from Dr. Wilcoxon and concluded:

> While Dr. Wilcoxon's opinions as a longtime treating practitioner have been considered, the undersigned cannot accord them great weight for several reasons. First, pursuant to 20 C.F.R. § 404.1513/416.913 although the opinions of a physician assistant or similar type of medical professional can be used to establish the nature and severity of an individual's impairments, these individuals are not considered to be acceptable medical sources. Second, the ultimate decision of disability is one to be decided by the Social Security Administration, not that of a physician (Social Security Ruling 96-5p). Finally, as treatment, which in and of itself appears to be somewhat inconsistent with his conclusions as does the change in his opinions from January in that the claimant could perform a range of sedentary activities to her being totally disabled in February 2008. For all of these reasons, the undersigned does not find Dr.

Wilcoxon's opinions to be persuasive and, thus, accords them little weight herein.

(Tr. at 24).

The ALJ complied with all of the applicable Regulations regarding the opinions of Dr. Wilcoxon. The ALJ is correct that chiropractors are not listed as acceptable sources of medical evidence of impairment. 20 C.F.R. § 404.1513(a). Chiropractors may help the Commissioner understand how an impairment affects a party's ability to work, 20 CFR § 404.1513(e)(3); however, medical opinions of chiropractors are entitled to little or no weight above that of the layman. *Rule v. Apfel*, 2001 WL 34670957, *22 (N.D.W.Va. 2001), citing *Lee v. Sullivan*, 945 F.2d 687 (4th Cir. 1991). Here, the ALJ concluded that Dr. Wilcoxon's ultimate conclusions were inconsistent with his treatment notes. (Tr. at 24). Therefore, the ALJ properly accorded little weight to Dr. Wilcoxon's opinions.

In addition, the ALJ properly rejected Dr. Wilcoxon's statement that Claimant is totally disabled. Social Security Ruling (hereinafter "SSR") 96-5p states: "Under 20 CFR 404.1527(e) and 416.927(e), some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." SSR 96-5p. An example of such an issue is "[w]hether an individual is 'disabled' under the Act." *Id.* "The regulations provide that the final responsibility for deciding issues such as [whether an individual is disabled] is reserved to the Commissioner." *Id.*

In regard to Dr. Serfontein, the ALJ examined the evidence received from him, along with the other evidence of record, and stated:

23

As with Dr. Wilcoxon's opinions, the undersigned has given consideration to these opinions, however, his conclusory statement that the claimant is unable to engage in work activity is rejected pursuant to Social Security Ruling 96-5p. Similarly, the undersigned does not find either his physical or mental assessments to be consistent with his own treatment notes nor with the other substantial evidence of record. As detailed above, examination on January 3, 2008, just five days prior to the doctor's first report and less than two months prior to his subsequent medical assessments, he found the claimant to have a normal mood and affect and good ability to handle everyday situations (Exhibit 26F). Second, neither the claimant nor his examination revealed any shortness of breath or pulmonary deficits and there was no joint swelling or weakness. (Id.). In fact, other than diminished sensation over both feet, there were no other significant findings noted and the claimant denied pain and said that she was doing well. (Id.). As such, it appears that in rendering these opinions the doctor relied heavily upon the claimant's subjective complaints rather than his objective findings. Finally, as a general practitioner, the undersigned not only finds Dr. Serfontein's opinions with respect to the claimant's mental health not only inconsistent with his examination findings but even more importantly, these opinions rest out of his area of expertise. Given all of the above, the undersigned rejects these opinions pursuant to Social Security Ruling 96-2p.

(Tr. at 24-25).

Unlike Dr. Wilcoxon, Dr. Serfontein is defined as an acceptable medical source. 20 C.F.R. § 404.1513(a). Therefore, the ALJ was required to consider Dr. Serfontein's opinion that Claimant was unable to engage in any work activity, an issue reserved to the Commissioner, to the extent required by SSR 96-5p:

If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5p. The ALJ complied with this directive in rejecting Dr. Serfontein's opinion that Claimant could not engage in any employment. Dr. Serfontein's opinion that Claimant could not engage in any employment was expressed in one of his responses to a list of questions written by Claimant's attorney. In particular, the question asked if Dr. Serfontein thought that Claimant's could engage in employment on a consistent

basis and if so, why not? Dr. Serfontein responded, "no, severe pain + discomfort." (Tr. at 375). Claimant quotes *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) in support of her position that "[a]t a minimum, the ALJ should have made an inquiry of Dr. Serfontein for clarification as to his basis for stating that [Claimant] is unable to engage in work activity." However, the ALJ was not required to seek such clarification because clarification was not necessary. As was clear from Dr. Serfontein's own statement, he relied on Claimant's subjective complaints that she suffered from severe "pain" and "discomfort" in forming his opinion. The ALJ rejected his statement on this basis, as Claimant's subjective complaints, and thus, an opinion based on them, did not comport with the evidence of record.

The ALJ next considered Dr. Serfontein's physical and mental assessments. As discussed, when an ALJ does not afford controlling weight to a claimant's treating physician, the ALJ must analyze and weigh all of the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527 and he must adequately explain his rationale in the decision. The ALJ complied with these requirements in rejecting Dr. Serfontein's assessments. He considered the length, frequency, nature, and extent of the treatment relationship between Claimant and Dr. Serfontein. He noted at the outset that the majority of Claimant's care has been rendered by Dr. Wilcoxon, Dr. Wagner, Claimant's former primary care physician, and Dr. Serfontein, Claimant's current primary care physician. (Tr. at 15). The ALJ later noted that Claimant is followed by her chiropractor, Dr. Wilcoxon, whom she sees weekly, and by her primary care physician, Dr. Serfontein. (Tr. at 20). The ALJ was clearly cognizant of the length, frequency, nature, and extent of the treating relationship between Claimant and Dr. Serfontein.

The ALJ then considered the factors of supportability and consistency and found that they were lacking. The ALJ found that Dr. Serfontein's physical and mental assessments were not supported by his own treatment notes. (Tr. at 24). Further, the ALJ found that his assessments were not consistent with the other substantial evidence of record. (Tr. at 24). For instance, on January 7, 2008, Dr. Serfontein's objective findings showed that Claimant's diabetes was controlled; that she had no side effects from her medication; and that was "doing well" regarding her hyperlipidemia and her lipids were within acceptable limits. (Tr. at 337). The following month, when asked to fill out a physical assessment form, Dr. Serfontein assessed Claimant with various limitations, repeatedly noting "pain" as the medical findings which support his assessment. (Tr. at 372-374). Dr. Serfontein did not note clinical findings or other objective evidence in support of his opinions; rather, he noted only subjective complaints. *Id.* Dr. Serfontein had physically examined and tested Claimant, yet he did not note those results to support his opinions because as is evident from his notations, it was her subjective complaints, not the objective evidence, that supported his opinions regarding Claimant's limitations.

Dr. Serfontein clearly indicates that he relied on Claimant's subjective complaints of pain in forming his physical assessment of Claimant. As discussed, the ALJ properly assessed Claimant credibility as only "fair." (Tr. at 21). Therefore, as Dr. Serfontein's opinions conflicted with the objective evidence of record due to his reliance on Claimant's subjective complaints, the ALJ properly rejected them. In addition, Dr. Serfontein is a general practitioner. He is not qualified to evaluate Claimant's mental faculties. The ALJ properly rejected his mental assessment for this reason.

### c.  **Missing Documents**

Claimant's final argument is that pages 293 through 336 are missing from the transcript of the record. (Pl.'s Br. at 11). Claimant is correct that these pages, which include a portion of Exhibit 13F, Exhibits 14F through 25F in full, and a portion of Exhibit 26F, are missing from the printed version of the transcript; however, the electronically docketed version is complete. (Docket No. 7). The ALJ clearly considered these documents, as he cites to them throughout his decision. (Tr. at 15-26). The Court considered these records as well. Therefore, the absence of the documents from the printed record does not necessitate remand.

## VI.  **Conclusion**

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of record.

**ENTERED:**  November 24, 2010.

Cheryl A.  Eifert
United States Magistrate Judge

27